UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JEFFREY C. JACOBSON,

               Petitioner,             Case No. 1:16-cv-997

v.                                   Honorable Janet T. Neff

DEWAYNE BURTON,

               Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Jeffrey C. Jacobson is incarcerated with the Michigan Department of Corrections at the Richard A. Handlon Correctional Facility (MTU) in Ionia County, Michigan.  On February 9, 2011, a Kent County Circuit Court jury found Petitioner guilty of one count of first-degree home invasion, MICH. COMP. LAWS § 750.110a(2); four counts of first-degree criminal sexual conduct (CSC I), MICH. COMP. LAWS § 750.520b; and one count of assault with a deadly weapon, MICH. COMP. LAWS § 750.82.  The trial court sentenced Jacobson as a second habitual offender, MICH. COMP. LAWS § 769.11, to serve concurrent terms of 7.5 to 30 years' imprisonment for the home invasion conviction, 2 to 6 years' imprisonment for the assault conviction, and 15 to 45 years' imprisonment for each of the CSC I convictions.  On August 8, 2016, Petitioner filed his habeas corpus petition raising 7 grounds for relief, as follows:

      I.     PETITIONER WAS DENIED HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS A RESULT OF DEFENSE COUNSEL'S CONFLICT OF

INTEREST WHERE COUNSEL'S LOYALTY WAS TO THAT OF THE PROSECUTOR.[1]

II.    [PETITIONER] WAS DENIED HIS STATE AND CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL IN HIS APPEAL OF RIGHT WHERE APPELLATE COUNSEL FAILED TO PURSUE THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL AT A *GINTHER* HEARING THUS DENYING [PETITIONER] THE PROBABILITY OF RELIEF.

III.    IT WAS PROSECUTORIAL MISCONDUCT AS WELL AS A FIFTH AND SIXTH AMENDMENT VIOLATION FOR THE PROSECUTOR TO INTERFERE WITH THE [PETITIONER'S] RIGHT TO THE ASSISTANCE OF COUNSEL BY INVOKING DEFENSE COUNSEL TO ASSIST HIM IN OBTAINING A CONVICTION.

IV.    [PETITIONER] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS A RESULT OF THE TRIAL COURT'S FAILURE TO INITIATE [IT'S] CONSTITUTIONAL DUTY TO INQUIRE INTO DEFENSE COUNSEL'S CONFLICT OF INTEREST WHEN THE JUDGE WAS REASONABLY APPRAISED OF THE CONFLICT.

V.    IT WAS STRUCTURAL ERROR AND AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO ADJOURN THE [PETITIONER'S] TRIAL FOR A FALSELY STATED REASON TO CONCEAL DEFENSE COUNSEL'S UNCERTAINTY IN REPRESENTING [PETITIONER] AND DENYING [PETITIONER] HIS SIXTH AMENDMENT RIGHT TO THE ASSISTANCE OF COUNSEL AND THE ASSISTANCE OF COUNSEL OF CHOICE, BOTH STRUCTURAL ERRORS.

VI.    [PETITIONER] WAS DENIED HIS SIXTH AMENDMENT RIGHT OF SELF-REPRESENTATION, A STRUCTURAL ERROR, WHEN THE TRIAL COURT IGNORED [PETITIONER'S] REQUEST TO REPRESENT HIMSELF.

VII.    IT WAS AN ABUSE OF DISCRETION BY THE TRIAL COURT TO ALLOW A FORGED CONFESSION LETTER INTO EVIDENCE SUBMITTED THE DAY OF TRIAL BY THE PROSECUTOR SO AS TO NOT ALLOW THE DEFENSE THE OPPORTUNITY TO HAVE THE LETTER AUTHENTICATED RESULTING IN THE [PETITIONER] BEING PREJUDICED.

---

[1] Petitioner contends that his counsel had a conflict of interest because, at the time he represented Petitioner, counsel was the subject of attorney disciplinary proceedings in an unrelated case.  Sometime after Petitioner's trial, but before sentencing, the attorney's license to practice law was suspended for six months.  Petitioner was represented by substitute counsel at sentencing.

(Pet., ECF No. 1, PageID.10-15.)   Respondent has filed an answer to the petition (ECF No. 8) stating that the petition should be denied because Petitioner's habeas issues are without merit or procedurally defaulted.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Factual allegations

At about 9:30 a.m. on Monday, January 4, 2010, Petitioner visited the home of his estranged wife, Melissa.  According to Petitioner, Melissa invited him in, they worked together on Petitioner's resumé, and they participated in consensual sexual intercourse.  (Trial Tr. III, ECF NO. 9-8, PageID.475-478.)   According to Melissa, Petitioner forced his way into the house, threatened her with a knife, and forced her to endure two penile/vaginal penetrations and two oral/vaginal penetrations.  (Trial Tr. II, ECF No. 9-7, PageID.436-442.)

The prosecutor called several witnesses in addition to the victim: three police officers who responded when Melissa reported the incident, a crime scene technician who collected evidence from the scene, a forensic scientist from the Michigan State Police laboratory, and the nurse who examined Melissa for evidence of the criminal sexual conduct.  The prosecutor also introduced letters that Petitioner sent to Melissa while he was in jail.  One of those letters included language that could be interpreted as a confession and apology for the events of January 4, 2010.  Petitioner contended that the pages of the letter that included that language were forged.

In addition to Petitioner, the defense called two witnesses:  Petitioner's sister and Petitioner's daughter.

As the trial judge pointed out at sentencing, many of the key facts underlying the criminal charges were undisputed.  (Sentencing Tr., ECF No. 9-11, PageID.517.)  There was no question that Petitioner was at Melissa's home in violation of a personal protection order.  There was no question that Petitioner possessed a knife when he arrived.  And, there was no question that Petitioner penetrated Melissa multiple times.

The inconsistencies between the two stories centered on Petitioner's use of force to enter the home, use of the knife to threaten his estranged wife, and use of force to compel her to submit to multiple sexual penetrations.  The only two persons who could speak directly to the events of that morning were Petitioner and Melissa.

The jury found Melissa's version of events to be the credible one.  Nonetheless, the jury did not find Petitioner guilty on the charge of assault with intent to commit murder, instead finding Petitioner guilty of the lesser included offense of assault with a dangerous weapon.  (Trial Tr. V, ECF No. 9-10, PageID.509.)

After Petitioner's trial, but before his sentencing, Petitioner's trial counsel's license to practice law in Michigan was suspended for 179 days because counsel "neglected the interests of his clients; failed to seek the lawful objectives of his clients; failed to act with reasonable diligence and promptness in representing his clients; failed to adequately communicate with his clients regarding the status of their matters; failed to move to withdraw from a matter; and failed to make reasonable efforts to expedite litigation consistent with the interests of the clients and a tribunal."  State of Michigan Attorney Discipline Board, Notice of Suspension with Conditions (By Consent), (Feb. 23, 2011).  Petitioner retained new counsel for his sentencing.  At the sentencing hearing, Petitioner read a 15-page letter complaining of his trial counsel's ineptitude.  (Sentencing Tr., ECF No. 9-11, PageID.513-517.)

With the assistance of appointed appellate counsel, Petitioner filed a motion for a new trial which also sought an evidentiary hearing regarding his claims of ineffective assistance of counsel. The trial court conducted the evidentiary *Ginther* hearing on March 26, 2012.[2] After hearing testimony from Petitioner and his trial counsel, the trial judge concluded that trial counsel's representation did not "[fall] below an objective standard of reasonableness and effectiveness[;]" and, further, that even if the representation had proceeded exactly as Petitioner had wanted there would be "no basis whatever for believing that . . . the results of the trial would have been [in] any way . . . affected." (*Ginther* Hr'g Tr., ECF No. 9-13, PageID.548.)

Petitioner's appellate counsel did not raise any ineffective assistance of counsel issues in Petitioner's appellate brief. (Appellant's Br., ECF No. 9-16, PageID.711-749.) Instead he raised two issues related to sufficiency of the evidence. By way of a pro per supplemental brief, Petitioner raised the ineffective assistance of counsel issue as well as a prosecutorial misconduct issue and an evidentiary issue regarding Petitioner's "confession" letter:

I.    Was trial counsel involved in a per se conflict of interest where his personal interests were pitted against those of his client when the ability to represent defendant was uncertain due to the fact he was in the process of negotiating a discipline in which a law license suspension was imminent and the prosecutor falsely adjourned the trial and the judge knew this thereby denying the defendant assistance of counsel and ultimately putting in control of the prosecutor who the defendants attorney would be?

II.   Did the prosecutor violate defendant's due process rights by suppressing exculpatory evidence in the form of letters preventing defendant from disputing the misleading inferences prosecution had drawn by manipulating the innocuous letters defendant had written to complainant (wife) which ultimately prejudiced him?

III.  Was it "plain error" and an abuse of discretion by trial judge to allow a forged confession letter to be submitted the day of trial to be used as

---

[2] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record. For that reason, evidentiary hearings regarding ineffective assistance of counsel are typically referred to as *Ginther* hearings.

5

evidence without allowing defense the opportunity to dispute its authenticity?

(Appellant's Standard 4 Br., ECF No. 9-16, PageID.801-803.)[3]   After filing the Standard 4 brief, Petitioner fired his appellate counsel and proceeded pro se.  He filed a motion to remand for another *Ginther* hearing.  The Court of Appeals denied that request.

With leave of the court of appeals, Petitioner filed an amended Standard 4 brief that raised the following issue:

IV.    Was Defendant denied his Sixth Amendment right to effective assistance of counsel as a result of his attorney's discipline issues which rendered his ability to represent his client at trial uncertain as well was it prosecutorial misconduct for the prosecutor to adjourn Defendant's trial for falsely stated reasons to keep counsel's conflict from the Defendant and use defense counsel's situation to elicit privileged information from him to use against the Defendant to compel him to testify and be a witness against himself in violation of the Fifth Amendment as was it an abuse of discretion and plain error for the trial judge to knowingly assist the prosecutor and defense attorney by allowing the trial adjournment and ignoring the Defendant's requests to know what is going on with his attorney?

(Appellant's Am. Standard 4 Br., ECF No. 9-18, PageID.1005.)  Petitioner was permitted to amend his Standard 4 brief again.  In his second amended Standard 4 brief, he raised the following issues:

V.    Was Defendant denied the effective assistance of counsel as a result of a personal conflict of interest which ultimately prejudiced the Defendant and denied him a fair trial?

VI.    Was it prosecutorial misconduct for the prosecutor to subvert the Defendant's right to the assistance of counsel by adjourning Defendant's trial for a falsely stated reason, thereby denying him the assistance of counsel, while his attorney was negotiating his own law license suspension, to keep from the Defendant, his attorney's discipline issues, to ensure he stay on as his attorney?

VII.    Was it prosecutorial misconduct for the prosecutor to submit into evidence, a forged confession letter on the day of trial so as to not allow the defense the opportunity to have it authenticated?

---

[3] Standard 4 permits an appellant to file a brief *in propria persona* covering issues the appellant wants to raise on appeal even though his counsel does not.  Mich. Admin. Order No. 2004-6.

VIII.   Was it an abuse of discretion to allow the adjournment of Defendant's trial for a falsely stated reason thereby causing an undue delay in the trial resulting in prejudice to the defendant and then ignoring Defendant's request to represent himself?

IX.    Did the trial judge abuse his discretion by forcing Defendant to go to trial without being afforded the opportunity to see the evidence being used against him?

X.     Was Defendant denied the effective assistance of counsel by court appointed appellate attorney when he denied the Defendant the opportunity to testify to trial attorney's ineffectiveness at a *Ginther* hearing?

(Appellant's 2d Am. Standard Br., ECF No. 9-19, PageID.1094.)  By unpublished opinion issued October 24, 2013, the Michigan Court of Appeals rejected Petitioner's claims of error and affirmed Petitioner's convictions and sentences.  (Mich. Ct. App. Op., ECF No. 9-16, PageID.690-704.) Petitioner sought reconsideration.  The court of appeals denied reconsideration on December 20, 2013.

Petitioner filed a pro per application for leave to appeal in the Michigan Supreme Court raising issues V-VIII and X from his second amended Standard 4 brief in the court of appeals.  The Michigan Supreme Court denied leave by order entered June 24, 2014.  (Mich. Ord., ECF No. 9-20, PageID.1207.)

Petitioner then returned to the trial court. He filed a motion for relief from judgment under the Michigan Court Rules raising six issues.  The issues raised were virtually identical to the issues he raised in his second amended Standard 4 brief; but in this motion he stated them as follows:

A.     Defendant was denied his state and constitutional right to the effective assistance of appellate counsel in his appeal of right where appellate counsel failed to pursue the ineffective assistance of trial counsel at a *Ginther* hearing thus denying the Defendant the probability of relief.

B.     It was prosecutorial misconduct as well as a Fifth and Sixth Amendment violation for the prosecutor to interfere with the Defendant's right to the

assistance of counsel by invoking defense counsel to assist him in obtaining a conviction.

C.    Defendant was denied the effective assistance of counsel as a result of the trial court's failure to initiate their constitutional duty to inquire into defense counsel's conflict of interest when the judge was reasonably apprised of the conflict.

D.    It was a structural error and an abuse of discretion for the trial court to adjourn the Defendant's trial for a falsely stated reason to conceal defense counsel's uncertainty in representing the Defendant and denying the Defendant his Sixth Amendment right to the assistance of counsel and the assistance of counsel of choice, both structural errors.

E.    Defendant was denied his Sixth Amendment right of self-representation, a structural error, when the trial court ignored Defendant's request to represent himself.

F.    It was an abuse of discretion by the trial court to allow a forged confession letter into evidence submitted the day of trial by the prosecutor so as to not allow the defense the opportunity to have the letter authenticated resulting in the Defendant being prejudiced.

(Mot. for Relief from J., ECF No. 9-14, PageID.551-552.)  The trial court refused to consider issues B, C, D, and F because they had been decided against Petitioner on his direct appeal.  (Kent Cty. Cir. Ct. Ord., ECF No. 9-15, PageID.686.)  The trial court considered and rejected issues A and E as factually unsustainable.  (*Id.*, PageID.688-689.)  Petitioner applied for leave to appeal the trial court's decision in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders entered September 11, 2015, and June 28, 2016, respectively.  (Mich. Ct. App. Ord., ECF No. 9-21, PageID.1279; Mich. Ord., ECF No. 9-22, PageID.1449.)  Petitioner then filed the instant petition.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).   In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

A.    The effectiveness of Petitioner's trial counsel

Petitioner claims his trial counsel rendered constitutionally ineffective assistance. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. Petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that

counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner was afforded an opportunity to fully develop the record regarding the quality of counsel's assistance at the March 26, 2012, *Ginther* hearing.  The trial court and court

of appeals reviewed each of Petitioner's assertions and flatly rejected them.  The state courts expressly relied on the *Strickland* standard in rejecting Petitioner's claims.

Over the course of the state court proceedings, Petitioner has stated and restated his claims of ineffective assistance many times with varying emphases and levels of detail.  Moreover, issues that are cast as prosecutorial misconduct claims or trial court failings are often, at their core, ineffective assistance claims that blame the prosecutor or the court for counsel's errors.  For example, habeas issue I contends that Petitioner's counsel rendered ineffective assistance because he had a conflict of interest and was loyal to the prosecutor.  Habeas issue III accuses the prosecutor of misconduct because he at least used, and perhaps "invoked," counsel's conflict of interest.  Habeas issue IV contends that the trial judge was at fault because he was aware of counsel's conflict of interest, but failed to inquire further to protect Petitioner.  Habeas issue V argues that the trial judge's grant of an adjournment for a false reason served to cover up counsel's conflict of interest and, therefore, denied Petitioner assistance of counsel and assistance of counsel of Petitioner's choosing.  Petitioner's argument supporting these four issues is based on a fanciful reconstruction of the facts.

Petitioner contends that once his counsel had undertaken the representation, counsel abandoned Petitioner, avoiding all contact with Petitioner and his family.  (Pet'r's Br., ECF No. 2, PageID.47-48.)  Petitioner opines that during this period, his counsel negotiated the suspension of counsel's law license with the attorney discipline board.  (*Id*.)  Petitioner believes that those negotiations caused counsel some uncertainty as to whether he could continue to represent Petitioner, uncertainty that the prosecutor helped resolve by falsely claiming the need for an adjournment to permit discovery regarding Petitioner's medical records.  (*Id*.)

12

Petitioner claims that, in exchange for the prosecutor's assistance with the adjournment, trial counsel sold Petitioner out to the prosecutor; counsel informed the prosecutor that a sexual act had occurred.  (Pet'r's Br., ECF No. 2, PageID.90.)  According to Petitioner, the prosecutor took that information to the forensic lab technician to figure out how, if indeed a sexual act had occurred, none of Petitioner's DNA was present on the vaginal and anal swabs from the victim.  (*Id.*)  In Petitioner's scenario, the technician then informed the prosecutor that if Petitioner had undergone a vasectomy there would be no DNA.  (*Id.*)  Petitioner envisions that the prosecutor must have then gone to the victim to find out if Petitioner had undergone a vasectomy.  (*Id.*, PageID.91.)  She would have acknowledged that fact, but the prosecutor would have still needed more evidence otherwise "there was no sense pursuing this prosecution any further."  (*Id.*)  At that point, Petitioner reasons, the prosecutor would have been confounded by physician/patient privilege so there would have been no way for the prosecutor to prove that Petitioner had undergone a vasectomy.  (*Id.*)

Against that backdrop, Petitioner contends the prosecutor falsely stated he was doing search warrants for Petitioner's medical records.  (*Id.*)  The prosecutor arranged for the trial to be adjourned, not because of the search warrants, but to help out Petitioner's counsel who was avoiding Petitioner as counsel negotiated his suspension with the attorney discipline board.  (*Id.*)[4]  After the adjournment, the prosecutor illegally obtained Petitioner's medical records without Petitioner's knowledge or consent.  (*Id.*, PageID.92.)  The prosecutor shared them with Petitioner's

---

[4] In Petitioner's words:

One can reasonably infer the prosecutor didn't have a case and these charges should be dismissed. One can also reasonably infer that income for Mr. Dimitriou from all representations was suddenly important in the wake of a lengthy disbarment from practicing law and the substantial loss of income that would accompany such disbarment.  The prosecutor needed a case and Mr. Dimitriou needed income.

(Pet'r's Br., ECF No. 2, PageID.56.)

counsel.  (*Id.*)  Perhaps out of gratitude for the adjournment, Petitioner's counsel stipulated that Petitioner had undergone a vasectomy.  (*Id.*, PageID.92-93.)

According to Petitioner, his counsel had become a witness for the prosecution. Counsel conceded that a sexual act occurred and confirmed the key link in the chain (Petitioner's vasectomy) that proved Petitioner's participation in that sexual act.  Petitioner suggests that he had never intended to testify, but instead planned to rely on the prosecutor's inability to show that Petitioner had even been at Melissa's home on January 4, 2010.  (*Id.*, PageID.52-53, 92-93.) Petitioner argues that it was only because counsel had stipulated to the fact of Petitioner's vasectomy that the prosecutor could tie Petitioner to the physical evidence of a sexual act and, thus, Petitioner was forced to testify to offer support for a defense of consent.  (*Id.*)

Petitioner also claims that the conspiracy to keep Petitioner's counsel on the case despite the disbarment proceedings expanded to include the trial judge.  According to Petitioner, the trial court routinely responded promptly to Petitioner's correspondence until Petitioner questioned the adjournment of the trial.  (*Id.*, PageID.63-64.)  The letter regarding the adjournment, however, did not prompt a response for weeks.  On November 29, 2010, the trial court responded. (*Id.*)  Petitioner claims that is the day his counsel's discipline issues were finalized.  (*Id.*)  Petitioner concludes:

> The timing of the letter from the judge proves without question the trial judge was assisting the prosecutor and Mr. Dimitriou in concealing Mr. Dimitriou's disbarment issues to prevent Petitioner from seeking alternate representation.  The judge was waiting until the disbarment negotiations were finalized before responding to Petitioner.

(*Id.*, PageID.64.)

Although Petitioner's scenario is constructed around events that actually occurred (e.g., the adjournment of the trial, counsel's disciplinary proceedings, the prosecution's attempt to

obtain Petitioner's medical records, the defense of consent, the stipulation regarding Petitioner's vasectomy), it is held together only by entirely speculative inferences.  Petitioner offers no support for his claims that his counsel was so troubled by the disciplinary proceedings and so daunted by the prospect of losing income that counsel would do anything, even work against his client in favor of the prosecution, to maintain the income flow from Petitioner's case.  Petitioner offers no support for his claim that the prosecutor so benefited from the presence of Petitioner's counsel that the prosecutor would lie and cheat to keep Petitioner's counsel on the case.  Petitioner offers no support for the assertion that the trial judge joined the conspiracy for the purpose of hiding counsel's disciplinary proceedings from Petitioner.  Finally, and most importantly, Petitioner offers no support for the claim that lies at the foundation of his scenario: that he had a viable defense other than consent.

At the *Ginther* hearing, Petitioner and his counsel testified that Petitioner's defense from the outset was based on consent.   (*Ginther* Hr'g Tr., ECF No. 9-13, PageID.531-532, 540-541.)  Petitioner acknowledged that this was a "he said/she said" case.  (*Id*., PageID.532.)  In this instance, he said she consented.  There was no way to present that defense without Petitioner's testimony or without acknowledging the fact that Petitioner had a sexual encounter with his wife.  Counsel's stipulation that Petitioner had vasectomy surgery years before is entirely consistent with that defense.[5]  None of the allegedly suspect conduct by counsel seems even remotely questionable when it is illuminated by the *Ginther* hearing record.

---

[5] Moreover, the prosecution did not have to rely on Petitioner's medical records to prove the vasectomy.  Petitioner's wife testified regarding Petitioner's vasectomy.  (Trial Tr. II, ECF No. 9-7, PageID.440.)  The prosecutor could also have asked Petitioner.  Even if the privilege protects from disclosure the doctor's knowledge of the vasectomy, it does not protect from disclosure the fact of the vasectomy.  *People v. Doers*, No. 288514, 2010 WL 2594878, at *3-5 (Mich. Ct. App. Jun. 29, 2010) ("[The court erred by admitting testimony by the doctor that performed a successful sterilization vasectomy on defendant in 1981. . . . [But,] the vasectomy evidence was properly admitted through other testimony.  Thus, this error does not require reversal.").

The conclusions of the trial court upon completion of the *Ginther* hearing, as affirmed by the Michigan Court of Appeals, are eminently reasonable on the record. The trial court concluded that Petitioner's challenges regarding trial strategy were unfounded. The court found that Petitioner and his counsel agreed to present a defense of consent and that the strategy was pursued effectively. The trial court determined that counsel's disciplinary proceedings had no effect on Petitioner's trial. The trial court found that the adjournment was entirely independent of the disciplinary proceedings. The trial court accepted counsel's testimony as establishing a "reasonable basis for all of the important decisions in the case and . . . more than adequate to respond to the various complaints raised by [Petitioner]." (*Id*., PageID.548.) Even though the court concluded that Petitioner's claims of ineffective assistance failed on the first *Strickland* prong, the court went on to examine prejudice and reasonably determined that if the case had proceeded as Petitioner now desired, the result would have been no different. (*Id*.) The court of appeals concluded that the trial court's determinations were proper. (Mich. Ct. App. Op., ECF No. 9-16, PageID.698-700.)

Petitioner has failed to show that the state courts' resolution of his ineffective assistance claims is either contrary to, or an unreasonable application of, *Strickland*. Petitioner has further failed to demonstrate that the trial or appellate courts' factual determinations are unreasonable on the record. Petitioner's failure to establish that his counsel rendered ineffective assistance defeats all of the claims he raises in habeas issues I, III, IV and V, even though those issues are cast, in part, as claims arising from prosecutorial misconduct or trial court error.

B.    The effective assistance of Petitioner's appellate counsel

Petitioner also complains that his appellate counsel rendered constitutionally ineffective assistance (habeas issue II). According to Petitioner, appellate counsel failed to

16

adequately investigate, present evidence regarding, or argue trial counsel's ineffective assistance at the *Ginther* hearing.  The trial court concluded that Petitioner's challenge to appellate counsel's effectiveness depended entirely on his claims that trial counsel was ineffective.  Because Petitioner's claims against trial counsel had no merit, the court reasoned Petitioner's claims against his appellate counsel also lacked factual substance.  (Kent Cty. Cir. Ct. Ord., ECF No. 9-15, PageID.687-688.)

The trial court's resolution of Petitioner's claim is entirely consistent with clearly established federal law.  Typically, habeas petitioner's challenge the effectiveness of appellate counsel for failure to raise an issue.  Here, Petitioner acknowledges that counsel raised the issue, but claims counsel should have raised it more effectively.  The trial court astutely commented that Petitioner equated effective assistance with successful assistance.  (Kent Cty. Cir. Ct. Ord., ECF No. 9-15, PageID.688) ("Essentially, Defendant is simply alleging that because appellate counsel was not successful in his arguments at the hearing, counsel was ineffective.").  Although Petitioner argues that he lost the motion for new trial because his appellate counsel performed poorly, the trial court's opinion makes clear that Petitioner lost because his claims were factually unsustainable.  As set forth above, that finding is amply supported on this record.

Counsel is not deemed ineffective for failing to raise a meritless argument.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000); see also *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").  *A fortiori*, counsel cannot be deemed ineffective for failing to prevail when his client insists that he

pursue a meritless argument.  Accordingly, Petitioner has failed to establish entitlement to habeas relief on his claim that appellate counsel rendered ineffective assistance.

C.    Petitioner's right to self-representation

Petitioner's dissatisfaction with the performance of his trial counsel caused him to inquire regarding self-representation.  In a letter to the trial judge dated November 4, 2010, Petitioner asked:

> What does a person do when his attorney is not doing his job?  Can I represent myself and send out my own subpoenas?  If that's feasible how quickly can I get going on this?  . . .  I have never been given a chance to speak my side of the story and I have not been given a fair opportunity to defend myself.  Do I not have that right?

(Nov. 4, 2010, Letter, ECF No. 9-14, PageID.614-615.)   The Sixth Amendment, applicable to the states through the Due Process Clause of the Fourteenth Amendment, provides that a criminal defendant shall have the right to the assistance of counsel in his defense.  *See* U.S. Const. amend. VI; *see also Faretta v. California*, 422 U.S. 806, 832-34 (1975); *Martinez v. Ct. of Appeal of Cal.*, 528 U.S. 152, 154 (2000).  This right necessarily implies its corollary, that a defendant has a right to proceed without counsel and represent himself.  *Faretta*, 422 U.S. at 832-34; *see also United States v. Mosely*, 810 F.2d 93, 97 (6th Cir. 1987) ("'The right to defend pro se and the right to counsel have been aptly described as "two faces of the same coin," in that waiver of one right constitutes a correlative assertion of the other.'") (quoting *United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970)).  "[F]orcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so."  *Faretta*, 422 U.S. at 817.  Given the importance of the right to counsel, however, a defendant's request for self-representation must be unequivocal and his waiver of his right to counsel and the decision to proceed pro se must be knowing, voluntary and intelligent.  *See Faretta*, 422 U.S. at 834-35; *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938).

18

The trial court rejected Petitioner's claim that he was denied the right of self-representation because Petitioner never took the first step: Petitioner never made an unequivocal request for self-representation.   The trial judge did not respond to the questions posed in Petitioner's letter.  Instead, the judge's clerk responded, advising Petitioner that the judge could not engage in *ex parte* communications but should communicate with the court through counsel. (May 26, 2015, Kent Cty. Cir. Ct. Ord., ECF No. 9-15, PageID.685-689.)   Petitioner never raised the issue after the November 4, 2010 letter; he proceeded to trial with his counsel without protest. (*Id.*)  The trial court's determination that Petitioner never made an unequivocal request to represent himself is well-supported by the record.  The court's further conclusion that absent such a request, Petitioner was not entitled to represent himself is neither contrary to, nor an unreasonable application of, *Faretta*, the clearly established federal law on this issue.  Petitioner is not entitled to habeas relief for violation of the Sixth Amendment right to self-representation.

D.    The "forged" confession letter

In his final habeas issue, Petitioner contends that the trial court abused its discretion when it admitted into evidence a letter Petitioner had written to his wife, one of dozens he wrote while he sat in the county jail awaiting trial.  Petitioner's concern is not the letter in its entirety. Instead, he is challenging the admission of two pages, pages that could be interpreted as an apology for improper behavior on January 4, that he contends were forged.  Petitioner also complains that the pages were only provided by the prosecutor on the eve of trial, effectively ambushing the defense.  Petitioner's counsel objected to admission of the "forged" confession letter.  (Trial Tr. III, ECF No. 9-8, PageID.448.)  The court admitted the letter, leaving it to the jury to assess Petitioner's claim that the apology section of the letter was in noticeably different handwriting and, thus, forged.  (*Id.*)

Petitioner states his challenge as a state law issue:  it was an abuse of discretion for the trial court to admit the letter.  The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  To convict a defendant through the knowing use of false evidence offends a fundamental principle of justice such that it would be a denial of due process. *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  To prevail on such a claim, Petitioner must show that the evidence was false. *Kennedy v. Mackie*, 639 F. App'x 285, 289 (6th Cir. 2016).

The Michigan Court of Appeals acknowledged that "[a] conviction on the basis of false evidence violates a defendant's due process rights."  (Mich. Ct. App. Op., ECF No. 9-16, PageID.702) (footnote omitted).  But, the court went on to explain that Petitioner had failed to demonstrate that the confession letter was false evidence:  "There is no reason for this Court to conclude that the complainant testified falsely when she stated that the confession letter was in Jacobson's handwriting, and no indication that the prosecutor knew that she was testifying falsely even if she did so."  (*Id.*)  Petitioner has failed to demonstrate that the Michigan Court of Appeals'

resolution of this issue is contrary to, or an unreasonable application of, clearly established federal law.  Moreover, Petitioner has failed to demonstrate that the state court's factual determinations regarding the confession letter are unreasonable based upon this record.  Petitioner is not entitled to habeas relief on his claim that the admission of the confession letter violated his due process rights.

### Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken.  28 U.S.C. § 2253(c)(1).  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

**Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated: December 5, 2017                                    /s/ Ellen S. Carmody
                                                         ELLEN S. CARMODY
                                                         U.S. Magistrate Judge




**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).